## ANDREW PAWELSKI ET AL. v. JOSEPH HARGREAVES ET AL.

Defendants, who were brewers, went to the shop of plaintiffs, who were wagon and carriage-makers, to obtain brewery trucks. Plaintiffs having none on hand, and being too busy to make them soon, ordered them, with the defendants' knowledge and assent, from wagon-builders in another city, with whom they had had dealings. The trucks were shipped to plaintiffs, who received and paid for them. Some alterations were made by plaintiffs, at defendants' request, and a painter, employed by the defendants, painted their names and business on the sides of the trucks while on the plaintiffs' premises. *Held*, in an action for non-acceptance and payment for the trucks, that this was a contract for sale of goods within the statute of frauds, and there was error in refusing to non-suit and submitting the case to the jury.

On error to the Circuit Court of Passaic county.

This action was brought to recover the price of three brewery trucks which were ordered by the defendants, but which they refused to accept and pay for on delivery. The defence was the statute of frauds. The defendants, who were about to enter the brewing business at Newark, went to the plaintiffs, who were carriage and wagon manufacturers in Paterson, and wished them to build three trucks. They were too busy to undertake to make them, but agreed to furnish them from the Milburn Wagon Company's works, at Toledo, Ohio, with

whom they had dealings. The order was given; the trucks, when finished, were shipped to the plaintiffs, at Paterson, who received them at their factory. Some slight alterations were made by the plaintiffs, at the defendants' request, and the latter engaged a painter, who rented and occupied the second story of the plaintiffs' shop and painted for them when required in their business, to paint and letter the trucks for them. This work was done in the paint-shop, and afterwards the defendants came to take them away. The plaintiffs demanded pay for the trucks before their removal. After considerable delay, and promises that were not kept, demand of payment was made, notice was given and the goods were sold by an auctioneer. The goods were ordered of the Milburn Wagon Company by the plaintiffs, who paid for them the published price less forty and six per cent., and the defendants were to pay the plaintiffs the price less twenty-five per cent.; the difference being their profit in the purchase. On this evidence the plaintiffs rested. The defendants moved to non-suit. This was refused. The defendants offered no testimony. The case was submitted to the jury on a charge from the court; exceptions were taken on refusals to charge, and a verdict was rendered for the plaintiffs.

For the plaintiffs, *Z. M. Ward.*

For the defendants, *John W. Griggs.*

The opinion of the court was delivered by

SCUDDER, J. The controversy between these parties may be narrowed to a very close issue, which is easily determined. The defendants refused to pay for the trucks when the money was demanded before they were taken from the plaintiffs' premises, and when sued for damages under the contract say that they are not bound within the terms of the sixth section of our statute of frauds. There was no writing, no acceptance and actual receipt, nor was any earnest given or part of the purchase money paid. There was some point made at the

Pawelski v. Hargreaves.

trial that there had been an acceptance and receipt of the trucks when they first arrived, based on the facts that the defendants' team assisted in carting them from the depot to the plaintiffs' factory, and afterwards, at the defendants' request, the trucks were moved to the painter's shop and there painted and lettered with the defendants' names and business. But they did not leave the plaintiffs' premises, nor is there any evidence to show an actual or even a constructive delivery and acceptance. The testimony is too light to admit of any consideration, and it was put aside briefly and decidedly in the charge of the court.

The mooted question upon which the main exception was taken to the charge was whether there was a contract for the sale of goods, wares and merchandise, for the price of $30 or upwards, which the statute of frauds says shall be void, between the plaintiffs and defendants ; or were the plaintiffs only the agents by whom the defendants made this purchase of the Milburn Wagon Company ?

The attempt to draw the facts of this case into the disputed realm of what are sales within the statute and what are contracts for work and labor without the statute, which has been so well discussed in the case of *Finney* v. *Apgar*, 2 *Vroom* 266, is not satisfactory. The trucks were existing at the time of the contract, *in solido*, and were not to be made according to order ; nor as things distinguished from the general business of the plaintiffs, for they were in the direct line of their business, and with that knowledge the defendants sought them to obtain the trucks. Whether these articles which were needed were standing in the salesroom of the plaintiffs, ready for delivery with slight alterations and adaptations, or whether they were in the salesroom of a business correspondent in a distant city, who was ready to sell and forward the goods to them on their credit, without knowing or caring who their customer might be, can make but little difference. The result would, in either case, be that by the intention of the parties there would be a transfer, for a price, from the plaintiffs to the defendants, of chattels in which the defendants had

no previous property; and according to the rule as formulated by Mr. Benjamin in his book on Sales, (*Corbin's ed., vol. I., p.* 121,) this would be a contract for the sale of a chattel within the statute of frauds. Whether, in this case, the plaintiffs bought the trucks of the Milburn Wagon Company as principals, or agents for the defendants, does not arise, for the facts do not warrant an inference of agency in the purchase. The transaction is as simple as if one should seek a certain kind of goods in a store where they are usually made or kept, and not finding them, request the tradesman to send elsewhere to procure them. This would be an ordinary accommodation in the way of business, and as much a contract for sale as if the goods were present for immediate delivery and acceptance. The short interval of time and distance required to complete the purchase will not alter the result or change the relative position of the parties. The difference in the price paid for the articles to the third person and that to be received will be a profit in a sale rather than a commission for brokerage or agency. In this case the plaintiffs bought the trucks in Ohio to sell to the defendants on their order, and they make their usual or agreed profit in their business. It was therefore clearly a contract for sale within the statute of frauds.

The court in their charge left it to the jury to say whether the arrangement between the plaintiffs and the defendants was a contract for the sale of goods by the plaintiffs to the defendants, or whether, according to the plaintiffs' story, the contract was for the sale of goods from the western company to the defendants. As there was no case made by the plaintiffs for this choice which was given to the jury, there was error in the charge, and the judgment will be reversed.

*For affirmance*—THE CHIEF JUSTICE. 1.

*For reversal*—THE CHANCELLOR, DEPUE, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, PATERSON. 11.